United States Court of Appeals

For the Eighth Circuit

_____

No. 13-2018
_____

United States of America

*Plaintiff - Appellee*

v.

Real Properties located at 7215 Longboat Drive (Lot 24), 7223 Longboat Drive (Lot 25), Johnston, Polk County, Iowa; Real Properties Located at 8707 Friestad Court (Lot 4), 8711 Friestad Court (Lot 3), Johnston, Polk County, Iowa

*Defendants*

Terri Buczkowski; Dale Buczkowski; Estate of Betty Mariani

*Claimants - Appellants*

_____

No. 13-2050
_____

United States of America

*Plaintiff - Appellee*

v.

Real Property located at 7212 Longboat Drive, Johnston, Polk County, Iowa

*Defendant*

Appellate Case: 13-2018    Page: 1    Date Filed: 05/02/2014 Entry ID: 4149996

Terri Buczkowski; Dale Buczkowski; Estate of Betty Mariani

*Claimants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 16, 2014
Filed: May 2, 2014

_____

Before WOLLMAN, BYE, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

The United States government filed civil forfeiture actions against five properties in Johnston, Iowa, alleging the properties were used to manufacture illegal drugs or were purchased with proceeds from illegal drug sales. The claimant-appellants filed claims to the defendant properties, but the district court struck their claims as untimely and entered forfeiture judgments in the government's favor. We vacate the forfeiture judgments, reverse the district court's order striking two of the claimant-appellant's claims as untimely, and remand for a merits determination on the claims to the properties.

I. Facts, State Law Background, and Procedural History

The government filed a verified complaint *in rem* on October 15, 2012, alleging that certain properties in Johnston, Iowa, were subject to forfeiture.[1] According to the

---

[1]The government's original complaint identified four properties described in the first caption in this case. Subsequently, the government moved to forfeit another

Appellate Case: 13-2018   Page: 2   Date Filed: 05/02/2014 Entry ID: 4149996

government, the properties were forfeitable because they were either purchased with proceeds from a drug crime or were used to facilitate the commission of a drug crime. See 21 U.S.C. § 881(a)(6)–(7). Richard Miller LLC once owned the properties, but in 2011 Iowa's Secretary of State administratively dissolved the company after it failed to deliver its biennial report (as state law requires). Under Iowa law, after an administrative dissolution, a company "continues in existence," Iowa Code § 489.705(4), but "may carry on only activities necessary to wind up its activities and liquidate its assets[.]" Id. Part of winding up a dissolved LLC requires the defunct company—after settling its debts with creditors—to return equity interests and then distribute remaining assets among its members. Iowa Code § 489.708(1)–(2).

The LLC's Certificate of Organization identified Betty Mariani as the LLC's registered agent, manager, and sole member at the time the government initiated forfeiture proceedings. Mariani died in July 2012, so Mariani's Estate (the "Estate"), by operation of Iowa law, received all the LLC's assets, including the properties at issue in this case. See Iowa Code §§ 489.501–04, 489.602(6)(a), 489.603, and 489.705–08. The government knew at the time it initiated forfeiture proceedings both that Mariani was the LLC's registered agent and manager and that the LLC had been administratively dissolved. Further, in its motion to strike claimant-appellants' claims, the government said that it "was aware" Mariani died in July 2012 "but was unable to find an estate opened in Illinois, where she lived." The government has not explained what efforts, if any, it made to attempt to locate the Estate. In fact, on September 20, 2012, in LaSalle County, Illinois, an Illinois probate court determined that Terri Buczkowski, Mariani's daughter, was the Estate's sole heir.

The government did not send notice of the pending civil forfeiture proceedings to the Estate or Terri. Instead, on October 17, 2012, the government sent direct notice

---

property located at 7212 Longboat Drive in Johnston, Iowa, generating a new case file in the process. The two cases have been consolidated for this appeal since they contain the same underlying allegations and affect the same claimants.

Appellate Case: 13-2018     Page: 3     Date Filed: 05/02/2014 Entry ID: 4149996

and a copy of the forfeiture complaint via certified and regular mail to Dale Buczkowski.[2] In addition, the government published notices of the pending forfeitures on an official government website beginning on October 19 and 20, 2012, and continuing until November 17, 2012.

On November 29, 2012, attorney David M. Michael called Maureen McGuire, Assistant United States Attorney for the Southern District of Iowa, to discuss the forfeiture proceedings. Mr. Michael followed up their conversation by sending an email to Ms. McGuire that read as follows:

> Thanks for the opportunity to discuss the Longboat Drive case with me today. *As I indicated, I may be representing the estate of Betty Mariani as a claimant in the case and I appreciate the update on the proceedings.* I will advise you as soon as I have been formally retained.

(Emphasis added). After this correspondence, the government did not send direct notice to the Estate, to Terri, or even to Mr. Michael for that matter.

Terri, the Estate, and Dale filed verified claims to the properties on January 10, 2013. On January 14, the government moved to strike their claims as untimely. The government argued that because Dale received direct notice, he had 35 days from October 17 (or November 21 at the latest) to file a claim.[3] As for the Estate and Terri (herein, "Claimants"), the government conceded in its motion-to-strike brief that it did

---

[2]Dale was noticed directly because the government in its investigation determined that Dale was "affiliated" in some manner with the properties. While it is not clear from the record, it appears Dale is Terri's son.

[3]The case caption identifies Dale as an appellant-claimant. In their reply brief before this court, however, claimant-appellants now state that Dale no longer wishes to appeal the district court's judgment that he filed his claim out of time. As such, we affirm the judgment with respect to Dale's claim.

-4-

not send them direct notice. Notwithstanding, the government argued that, pursuant to the publication notice provisions, see Fed. R. Civ. P., Supp. R. G(5)(a)(ii)(B), Claimants must have filed their claims by December 18 or 19 at the latest (that is, 60 days from the first day of publication on a government forfeiture website, which was October 19 for four of the properties and October 20 for 7212 Longboat Drive).

After Claimants filed their brief opposing the government's motion to strike, the government used its reply brief to offer a new argument: even in the absence of direct notice, Claimants' claims were still untimely because they received "actual notice" of the forfeiture proceedings.[4] To support its "actual notice" argument, the government attached a copy of Mr. Michael's email to Ms. McGuire.

The district court accepted the government's position that Claimants received "actual notice," so the court found their claims were untimely despite never having received direct notice of the forfeiture actions. The district court reasoned as follows:

> This Court finds it is unnecessary to delve into the reasonableness of the government's actions in notifying the claimants of the forfeiture because this Court finds that the Estate possessed actual notice of the pending forfeiture on or before November 29, 2012—the date attorney David Michael contacted the government regarding the pending forfeiture. . . . Although in his correspondence, Michael states he "may be representing the estate of Betty Mariani as a claimant in the case," the Estate must have had knowledge of the pending forfeiture in order to seek out his

---

[4] Pursuant to the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(4)(b)(v), "[a] potential claimant who had actual notice of a forfeiture action may not oppose or seek relief from forfeiture because of the government's failure to send the required notice." We discuss below in Part II.C whether Claimants did in fact receive "actual notice" within the meaning of this rule.

> representation. Whether or not Michael was retained to represent the Estate at that time is unimportant, as the only inquiry provided for in the Rules is whether the "potential claimant . . . had actual notice of the forfeiture action." *See* Rule G(4)(b)(v). The court acknowledges that the government could, and maybe even should, have directly noticed Terri as the sole heir to the Estate, provided for in Rule G(4). However, pragmatically, the notice the government afforded to Dale served its purpose: the record owner received notice of the pending forfeiture proceedings. The Court finds any failure by the government to directly notify the Estate immaterial because the Estate nonetheless acquired actual notice of the forfeiture.
>
> Terri and the Estate, therefore, had actual notice of the forfeiture action well in advance of the December 18, 2012, deadline to file a claim set by the publication of notice. Claimants failed to file their claims until January 10, 2013. The claims of Terri and the Estate are untimely, and the Court grants the government's motion to strike these claims.

The district court also rejected Claimants' request to file untimely claims. But see United States v. $125,938.62, 370 F.3d 1325, 1328–29 (11th Cir. 2004) (recognizing that a district court has discretion to extend the time for filing verified claims to potentially forfeitable property); United States v. Borromeo, 945 F.2d 750, 753–54 (4th Cir. 1991) (same). Claimants appeal.

## II. Discussion

A. Standard of Review

The parties dispute what standard we apply to review the district court's decision to strike Claimants' claims. The government argues, with some support, that

Appellate Case: 13-2018    Page: 6    Date Filed: 05/02/2014 Entry ID: 4149996

we review a district court's grant of a motion to strike only for abuse of discretion. See, e.g., United States v. Three Parcels of Real Prop., 43 F.3d 388, 391 (8th Cir. 1994) ("We review the district court's grant of the government's motion to strike the claims for abuse of discretion."). On the other hand, Claimants argue that this case requires *de novo* review because the district court interpreted the notice provisions in the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(4). We review such interpretations by the district court *de novo*. See, e.g., United States v. Fast, 709 F.3d 712, 720 (8th Cir. 2013) (noting that a district court's statutory interpretation is reviewed *de novo* on appeal); United States v. $11,500 in U.S. Currency, 710 F.3d 1006, 1010 (9th Cir. 2013) ("We review a district court's interpretation of the Supplemental Admiralty and Maritime Claims Rules de novo."). We agree with Claimants on this issue.

The district court "acknowledge[d] that the government could, and maybe even should, have directly noticed Terri as the sole heir to the Estate, provided for in Rule G(4)." But the court ultimately concluded that sending direct notice to Claimants was unnecessary because Claimants received "actual notice," as evidenced by the email sent from attorney Mr. Michael to AUSA Ms. McGuire. Thus, the district court necessarily had to construe both Supplemental Rules G(4)(b)(i)–(ii) (the "direct notice" requirements) and Supplemental Rule G(4)(b)(v) (the "actual notice" exception) in order to determine what proper notice required in this case. As such, we will review *de novo* the district court's decision to strike the claims, because here, that decision rested on an interpretation of the civil forfeiture notice provisions.

B. Direct Notice

18 U.S.C. §§ 981–87 contain various rules that govern civil and criminal forfeiture proceedings. Section 983(a)(4)(A) establishes that

> [i]n any case in which the Government files in the appropriate United States district court a complaint for forfeiture of property, any person claiming an interest in the

-7-

> seized property may file a claim asserting such person's interest in the property in the manner set forth in the Supplemental Rules for Certain Admiralty and Maritime Claims.

Supplemental Rule G, in turn, "governs a forfeiture action in rem arising from a federal statute." Fed. R. Civ. P., Supp. R. G(1).

The current appeal concerns Supplemental Rule G's notice requirements. For the government to discharge its notice obligations in a civil judicial forfeiture proceeding, among other things, the government "*must send notice* of the action and a copy of the complaint *to any person who reasonably appears to be a potential claimant*[.]" Fed. R. Civ. P., Supp. R. G(4)(b)(i) (emphasis added). In this case, the government filed forfeiture complaints against the defendant properties on October 15, 2012. The complaints averred that Richard Miller LLC was the owner of the properties and that Mariani was the LLC's "registered agent and manager." Given the government's representations in its own complaints, it follows that the government knew that Richard Miller LLC was a potential claimant when the government commenced the forfeiture litigation. Supplemental Rule G(4)(b)(i) thus required the government to send notice to Richard Miller LLC in accordance with Supplemental Rule G(4)(b)(ii), which provides:

> (ii) Content of the Notice. The *notice must state*:
>
> (A) the date when the notice is sent;
> (B) *a deadline for filing a claim*, at least 35 days after the notice is sent;
> (C) that an answer or a motion under Rule 12 must be filed no later than 21 days after filing the claim; and
> (D) the name of the government attorney to be served with the claim and answer.

-8-

Appellate Case: 13-2018     Page: 8     Date Filed: 05/02/2014 Entry ID: 4149996

(Emphases added). Richard Miller LLC's Certificate of Organization does not identify anyone other than Mariani as an agent, manager, or member of the LLC, so notice should have been directed to the LLC via Mariani. As mentioned above, Mariani died in July 2012, also something the government knew when it commenced the forfeiture suits. Instead of sending direct notice to the Estate, however, the government chose instead only to post notice of the forfeiture complaints on an official government website.

The question we must answer, then, is whether *the Estate* "reasonably appear[ed] to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)."[5] Fed. R. Civ. P., Supp. R. G(4)(b)(i). If the answer is yes, then the government was required to directly notice the Estate—published notice was insufficient—and therefore Claimants' claims have not been filed out of time because to this day they have not been served properly. See 18 U.S.C. § 983(a)(4)(A) (requiring "any person claiming an interest in the seized property" to file a claim "not later than 30 days *after the date of service of the Government's complaint*") (emphasis added); Fed. R. Civ. P., Supp. R. G(4)(b)(i) (notice "*must*" be sent to "any person who reasonably appears to be a potential claimant").

---

[5]Supplemental Rule G(5)(a)(ii) provides that "[u]nless the court for good cause sets a different time, [a] claim must be filed . . . (B) if notice was published but direct notice was not sent to the claimant or the claimant's attorney, no later than 30 days after final publication of newspaper notice or legal notice under Rule G(4)(a) or no later than 60 days after the first day of publication on an official internet government forfeiture site[.]" The government published notice of civil forfeiture for four of the properties beginning on October 19, 2012 (and October 20, 2012 for 7212 Longboat Drive). As such, if the publication statute controls, the deadline for filing a claim to four of the properties was 60 days from October 19, 2012, or December 19, 2012 (and December 20, 2012 for 7212 Longboat Drive).

On this issue, we conclude that even if the Estate did not "reasonably appear to be a potential claimant" in the proceedings when the government first filed its forfeiture complaint, the government knew, or at least reasonably should have known, that the Estate was a potential claimant no later than November 29, 2012. On that day, AUSA Maureen McGuire and attorney David M. Michael had a phone conversation. While the exact substance of that conversation is unknown, what is known is that Mr. Michael sent a follow-up email to Ms. McGuire telling her that he "may be representing the estate of Betty Mariani as a claimant in the case." In sum, on November 29, 2012—before the time for filing a claim had passed under Supplemental Rule G(5)(a)(ii)(B)[6]—the government knew the following: (1) Richard Miller LLC owned the defendant properties; (2) Mariani was the sole agent, manager, and member of Richard Miller LLC; (3) Mariani died in July 2012; and (4) an attorney had communicated to the government that he "may be representing the estate of Betty Mariani as a claimant in the case." On these facts, as a matter of law, we conclude that the Estate "reasonably appear[ed] to be a potential claimant" to the government "before the end of the time for filing a claim." Fed. R. Civ. P., Supp. R. G(4)(b)(i). The government was therefore required to send direct notice to the Estate with specific details regarding the forfeiture proceedings, including, most importantly in this case, "a deadline for filing a claim." Fed. R. Civ. P., Supp. R. G(4)(b)(ii)(B).[7]

Our circuit has noted that "forfeitures are not favored" in the law, United States v. One 1980 Red Ferrari, 875 F.2d 186, 188 (8th Cir. 1989) (per curiam), and it is also "well-established that forfeiture statutes are strictly construed against the government," United States v. $493,850.00 in U. S. Currency, 518 F.3d 1159, 1169

---

[6] See supra note 5.

[7] While Mr. Michael's email correspondence only says that he "may" be representing the Estate, we note that the government could have sent direct notice to Mr. Michael under Rule G(4)(b)(iii)(B) once he was formally retained. This rule permits notice to be sent "to the potential claimant *or to the attorney representing the potential claimant* with respect to the seizure of the property[.]" (Emphasis added).

(9th Cir. 2008) (internal quotation marks omitted). See also United States v. $38,000 in U.S. Currency, 816 F.2d 1538, 1547 (11th Cir. 1987) ("If anything, the burden on the government to adhere to the procedural rules should be heavier than on claimants. Forfeitures are not favored in the law; strict compliance with the letter of the law by those seeking forfeiture must be required."). Here, the government did not comply with the notice regime laid out in Supplemental Rule G. Accordingly, the Claimants' verified claims filed January 10, 2013 are not untimely because the time for filing a claim has not yet begun to run. See 18 U.S.C. § 983(a)(4)(A). We reverse the district court's judgment to the contrary and remand for a merits determination on the Estate and Terri's claims to the properties.

C. Actual Notice

The district court found below, and the government argues on appeal, that the email sent from Mr. Michael to Ms. McGuire mentioning that Mr. Michael "may" be representing the Estate constituted "actual notice" under Supplemental Rule G(4)(b)(v). Because the Estate received "actual notice," the argument goes, direct notice was not required on the facts of this case. We disagree.

The Supreme Court concluded in Dusenbery v. United States, 534 U.S. 161, 169 n.5 (2002), that, in general, "actual notice" means "receipt of notice." As discussed above, Supplemental Rule G(4)(b)(ii) defines what notice requires in the civil judicial forfeiture context. Among other things, the notice *must* include "a deadline for filing a claim." Fed. R. Civ. P., Supp. R. G(4)(b)(ii)(B). Given that the forfeiture statute expressly defines "direct notice," we hold that to satisfy the "actual notice" exception for the purposes of Supplemental Rule G(4)(b)(v), "actual notice" must include, at a minimum, actual knowledge of the deadline to file a claim. Such a construction avoids constitutional deficiencies this circuit has identified in similar forfeiture contexts. See Glasgow v. United States DEA, 12 F.3d 795, 798 (8th Cir. 1993) (holding unconstitutional attempted notice that "omitted the one piece of

Appellate Case: 13-2018    Page: 11    Date Filed: 05/02/2014 Entry ID: 4149996

information most critical to affording [plaintiff] a reasonable opportunity to be heard—the deadline for filing a claim").

In this case, evidence of "actual notice" consisted entirely of the email communication quoted above. That email says nothing about what knowledge Terri or the Estate possessed about the requisite filing deadlines. Further, Mr. Michael said only that he "may be representing" the Estate in the email, not that he was currently the Estate's attorney. Simply put, it is not reasonable to infer from the email correspondence that Claimants not only actually knew of the existence of forfeiture proceedings commenced against the properties, but also actually knew the deadlines to file their claims.

To be clear, we express no view on the merits of Claimants' claims to the properties. See, e.g., 18 U.S.C. § 983(d) (discussing the "innocent owner" defense). But to impute "actual notice" to the Estate and Terri on the basis of a communication to the government by an attorney who at the time did not represent them would work a serious injustice and raise troubling constitutional concerns. See, e.g., Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950) ("The notice must be of such nature as reasonably to convey the required information, *and it must afford a reasonable time for those interested to make their appearance*.") (Internal citation omitted) (emphasis added). Moreover, this circuit has long preferred merits dispositions over default judgments. See, e.g., Marshall v. Boyd, 658 F.2d 552, 554 (8th Cir. 1981) (noting that the Eighth Circuit has a "strong policy against default judgments" (citing Assman v. Fleming, 159 F.2d 332, 336 (8th Cir. 1947)). Our reversal of the district court reaffirms such basic principles of justice.

-12-

## III. Conclusion

We vacate the forfeiture judgments entered against the properties, and we reverse the judgment striking the Estate and Terri's claims as untimely. We remand the case for a merits determination on the Estate and Terri's claims to the properties.[8]

_____

---

[8]In the government's brief before this court, it argued for the first time that Claimants did not own the property at issue. We hold that the government waived the argument when it failed to raise it in the district court. See Orr v. Wal-Mart Stores, Inc., 297 F.3d 720, 725 (8th Cir. 2002) ("Ordinarily, we do not consider an argument raised for the first time on appeal."). Further, the argument is without merit, as Claimants attached Richard Miller LLC's Iowa Certificate of Organization in their reply brief to respond to the government's late argument. The Certificate clearly identifies Mariani as not simply the LLC's agent but also its sole manager and member—i.e., the sole *owner* of the properties in question after the LLC's dissolution.

-13-